UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN HERITAGE RAILWAYS, INC., et al.,<br><br>                                Plaintiffs,<br><br>v.<br><br>BRADLEY ARTHUR HIROU,<br><br>                                Defendant. | Case No.: 3:24-cv-1802-CAB-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT [Doc. No. 48];**<br><br>**(2) DENYING MOTION TO STRIKE [Doc. No. 51]** |

On October 8, 2024, Plaintiffs American Heritage Railways, Inc., et al., sued Defendant Bradley Arthur Hirou ("Hirou") for declaratory and injunctive relief, violation of California Commercial Code § 9509 and Business and Professions Code § 17200, and defamation. [Doc. No. 1 ("Compl.").] Plaintiffs alleged that Defendant Hirou filed fraudulent UCC-1 Financing Statements with the California Secretary of State against Plaintiffs' property. On February 26, 2025, the Court granted Plaintiffs a preliminary injunction against Hirou. [Doc. No. 20.] Plaintiffs now seek partial summary judgment on their first claim for declaratory relief and fourth claim for defamation. For the reasons below, the Court **GRANTS** the motion for partial summary judgment and **DENIES** the motion to strike.

## I. BACKGROUND

In June 2024, Plaintiffs—two corporations and their employees—received documents from Hirou that purported to be "Self-Executing Security Agreement[s]" in which Hirou claimed, *inter alia*, Plaintiffs would grant him "a security interest in all of [their] property" for using his common law copyright to "Filmwest © et al.," a business which he operates. [Compl. at 13–18.] Subsequently, Hirou filed UCC-1 Financing Statements against Plaintiffs Americans Heritage Railways, Inc. and Old Tucson Entertainment, LLC, within which he alleged unpaid debts for $148,500,000 each based on the purported violation of the security agreement. [*Id.* at 114–41.] A Uniform Commercial Code Financing Statement, or UCC-1 Financing Statement, "is a standardized legal form filed by a creditor giving notice of an interest in the personal property of a debtor." *U.S. v. Neal*, 776 F.3d 645, 649 n.1 (9th Cir. 2015).

As part of his UCC-1 Financing Statements, Hirou included purported invoices which state that the debt is for fees Plaintiffs incurred in using his copyright without authorization. [*See, e.g.*, Compl. at 126.] Plaintiffs alleged that they never entered any agreement with Defendant Hirou, never granted any security interest in any property to him, and that the UCC-1 statements are thus fraudulent. [*Id.* ¶¶ 50–55.] Plaintiffs further contended that they did not infringe upon any copyrights held by Hirou. [*Id.* at ¶ 39.] The Court granted Plaintiffs' motion for preliminary injunction. *Am. Heritage Rys., Inc. v. Hirou*, No. 3:24-CV-1802-CAB-JLB, 2025 WL 622614, at *2 (S.D. Cal. Feb. 26, 2025). Hirou was previously enjoined from filing unauthorized, frivolous UCC-1 Financing Statements against different parties by another court in this District. *Teeple v. Hirou*, 8-CV-2281-JAH-CAB, Doc. No. 37 (S.D. Cal. July 16, 2009) (holding that Hirou was prohibited from "filing further UCC-1 Statements . . . based upon [his] 'self-executing security agreements'").

Plaintiffs now seek summary judgment on their claims for declaratory relief and defamation. "[T]he Court does not address arguments or objections that do not respond to [Plaintiff]s' grounds for summary judgment or are otherwise irrelevant to issues before the

Court[,]" such as Hirou's improper, repeated challenges to service, standing, and personal jurisdiction. *Head v. McDonough*, No. 2:14-CV-01563-MCS-PLA, 2021 WL 3260613, at *2 n.1 (C.D. Cal. July 16, 2021).

## II.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility" of establishing the basis for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does so, the burden shifts to the opposing party to show that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

### A.   Declaratory Relief

Plaintiffs seek a declaration that (1) no copyright exists for "Filmwest ©, et al.," or Hirou's name, (2) no valid security agreement exists between Plaintiffs and Hirou, and (3) Hirou had no authority to file the UCC-1 Financing Statements, and they are thus invalid.

"A plaintiff may seek a declaratory judgment as to the ownership, *validity*, or infringement of a copyright." *KTS Karaoke, Inc. v. EMI Blackwood Music, Inc.*, No. 2:13-CV-915-CJC-JPR, 2014 WL 12589624, at *3 (C.D. Cal. Oct. 14, 2014) (emphasis added) (citing *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981)). Filmwest, as a business trade name, is not subject to common law copyright protection. *See Chestang v. Yahoo Inc.*, No. 2:11-CV-00989-MCE, 2012 WL 3915957, at *5 (E.D. Cal. Sept. 7, 2012) (finding a business trade name is not copyrightable as a matter of law and "cannot serve as the basis for a copyright action"). Hirou also contests that his personal name is copyrighted, but he is incorrect. [*See, e.g.*, Doc. No. 18 at 2]; *see United States v. Rodriguez Ramirez*, 291 F. Supp. 2d 266, 269 (S.D.N.Y. 2003) (voiding liens

placed on property and rejecting claimed common law copyright in a name as federal law preempted common law copyright and "a name is not a proper subject for copyright"); *see also Ray v. Credit Union One*, No. CIVA 06-11694, 2007 WL 522700, at *2 (E.D. Mich. 2007) ("Plaintiff's Complaint fails to state a claim for relief because his name is not subject to copyright protection."). Indeed, "common law copyright law does not exist, as it would be pre-empted by federal law." *Gannon v. Tucknott Miller*, No. 1:05-CV-00168 TS, 2006 WL 1793581, at *2 (N.D. Ind. 2006).

Regarding the purported security agreements, Plaintiffs state that they never entered any agreement with Hirou in any capacity. [Doc. No. 48-1 at 6.] Hirou offers zero evidence that Plaintiffs did so. Instead, he inexplicably states that they are self-executing agreements, indicating that he believes he could unilaterally compel Plaintiffs to enter them. [Compl. at 13–18; Doc. No. 49 at 2.] As the "[c]reation of a valid contract requires mutual assent[,]" and Hirou concedes Plaintiffs never assented, the Court finds no dispute that Hirou and Plaintiffs never entered any security agreement. *First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1065 (9th Cir. 2011); *see also Rodriguez Ramirez*, 291 F. Supp. 2d at 269.

Given the lack of any enforceable security agreement, Hirou had no authority to file UCC-1 Financing Statements against Plaintiffs. *See Lightstorm Ent., Inc. v. Cummings*, No. 2:20-CV-08044-ODW (PVCX), 2021 WL 2483792, at *3 (C.D. Cal. 2021) ("The California Commercial Code . . . provides that a person may file a UCC-1 *only if the debtor authorizes the filing*[.]" (emphasis added) (citing Cal. Com. Code §§ 9509, 9315(a)(2)). Indeed, Hirou's filings are part of a rising "odd area of law . . . dealing with individuals who file UCC-1 Financing Statements without having any legal or contractual right to do so." Gerald L. Blanchard & Rodney A. Morris, 1 Problem Loan Workouts, § 4:4 Fraudulent Financing Statements (2025). Accordingly, the Court finds that Plaintiffs are entitled to summary judgment on their claim for declaratory relief that (1) no copyright exists for "Filmwest ©, et al.," or Hirou's name, (2) no valid security agreement exists

3:24-cv-1802-CAB-JLB

between Plaintiffs and Hirou, and (3) Hirou's UCC-1 Financing Statements filed against Plaintiffs are invalid.

### B. Defamation

Plaintiffs argue that Hirou's fraudulent UCC-1 Financing Statements are per se defamatory because they state that Plaintiffs Americans Heritage Railways, Inc. and Old Tucson Entertainment, LLC, each owe a debt of $148,500,000 to Hirou and that he possesses liens against their property. [Doc. No. 48-1 at 8–9.] Plaintiffs assert that the UCC-1 Statements affect "their credit worthiness, financial stability, and ability to honor legitimate obligations to legitimate creditors" and overall injure their businesses. [*Id.*] The Court agrees.

Under California law, defamation involves (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007). As to the first prong, there is no genuine dispute that Hirou filed the UCC-1 Financing Statements with the California Secretary of State who then, as required, published them to a database or website to notify the public of Hirou's purported liens in Plaintiffs' property. As to falsity, the second prong, the Court found above that there is no dispute that Hirou's UCC-1 Financing Statements were false as Plaintiffs never entered any agreement with him nor otherwise authorized the filings as required.

As to the third prong, a publication is per se defamatory, or defamatory on its face, when it does not require extrinsic explanatory matter. *See ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 623 (2017). In the complaint, Plaintiffs attached exhibits of the UCC-1 Financing Statements, which show Plaintiffs as debtors, Hirou as the secured party, and include invoices for $148,500,000 that Hirou sent to Plaintiffs for their purported, unauthorized use of his copyright. [*See, e.g.,* Compl. at 127–28, 140.] Hirou states the amount was incurred by Plaintiffs for their unauthorized use of his private, common-law copyrighted property. [*Id.* at 126, 140.] The statements contain e-stamps confirming they were received by the California Secretary of State on July 12, 2024. [*Id.*] Hirou's filings

are per se defamatory because he falsely states that Plaintiffs violated a copyright (implying unlawful conduct), incurred over one-hundred million dollars in fees, and owe outstanding debts to Hirou, which together harm Plaintiffs' business reputation without any extrinsic explanatory matter. *See ZL Techs., Inc.*, 13 Cal. App. 5th at 623 ("A corporation can be libeled by statements which injure its business reputation[.]").

Regarding the fourth prong of privilege, Hirou argues that his filings are privileged pursuant to Civil Code § 47(c) which "grants a qualified privilege for certain communications made without malice, especially in the context of protecting commercial interests." [Doc. No. 49 at 6.] California privileges publications made in "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civil Code § 47(c). In other words, the privilege applies "to a communication from one interested person to another[.]" *Morris v. Nat'l Fed'n of the Blind*, 192 Cal. App. 2d 162, 164 (1961). "[T]he required relation between the parties to the communication is a contractual, business or similar relationship, such as between partners, corporate officers and members of incorporated associations, or between union members [and] union officers." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 914 (2002) (internal quotation marks omitted). "The existence of the privilege is ordinarily a question of law for the court." *Id.* at 915.

Hirou has no legitimate relationship with Plaintiffs. He merely sent them "self-executing security agreements" based on non-existent copyrights. Even if, however, the Court assumes that Hirou did have a legitimate relationship with Plaintiffs, "[t]he privilege may be defeated by evidence that the challenged statement was made with [actual] malice." *Umamoto v. Insphere Ins. Sols., Inc.*, No. 13-CV-0475-LHK, 2013 WL 2084475, at *5 (N.D. Cal. May 14, 2013) (citing Cal. Civ. Code § 47(c)). Actual malice can be established "by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Id.* Hirou

offers nothing to show he had any reasonable grounds to believe that Plaintiffs had consented to the filing of the UCC-1, as required, and that he was entitled to hundreds of millions of dollars in unauthorized copyright usage fees from Plaintiffs. Accordingly, the Court finds his publications were made with reckless disregard and that the privilege does not apply.

As to the final prong, Plaintiffs do not allege any special damages. As such, they must establish that Hirou's filings against them have a natural tendency to injure. *See Taus*, 151 P.3d at 1209. The Court finds Hirou's filings naturally injure Plaintiffs' business reputation specifically because he states that they incurred millions of dollars in unauthorized copyright usage fees, which suggests Plaintiffs engage in unsound and unlawful business practices. *See ZL Techs., Inc.*, 13 Cal. App. 5th at 623.

Hirou argues that "defamation per se [] requires a showing of falsity and fault" and that he believed in good faith that he was protecting his intellectual property, thus there must be a factual determination as to his intent. [Doc. No. 49 at 6.] There is no dispute that Hirou intended to file the UCC-1 Financing Statements, as Plaintiffs have shown and Hirou has conceded. [*See, e.g.*, Doc. No. 49 at 2; Compl. at 13–18.] The Court also established above that the filings/statements were false. Hirou cites no authority for his suggestion that acting in good faith bars a finding of defamation. Rather, Plaintiffs are "not required to show actual malice in a claim for defamation per se." *Future Ads LLC v. Gillman*, No. 8:13-CV-905-DOC-JPR, 2013 WL 12306479, at *7 (C.D. Cal. Dec. 23, 2013).

Hirou also asserts that his filings are protected expressions under the First Amendment. [Doc. No. 49 at 6.] Citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), he contests that "such expressions are protected unless made with actual malice." [Doc. No. 49 at 6.] *Sullivan* held that public figures must show actual malice in defamation actions. *See Duke v. City of Fernley*, No. 3:09-CV-00739-RAM, 2012 WL 965955, at *10 (D. Nev. Mar. 21, 2012) ("*Sullivan* and its progeny indubitable stand for the proposition that actual malice must be demonstrated in defamation actions *involving public officials*[.]"

(emphasis added)). Given that no public figures are involved, *Sullivan* does not apply here. Moreover, the Court found above that Hirou's filings against Plaintiffs *were* made with actual malice or reckless disregard. Hirou defamed Plaintiffs through his fraudulent UCC-1 filings; the First Amendment does not protect defamation. *See USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010). As Plaintiffs have shown there is no genuine dispute as to any material fact and satisfied each prong of their defamation claim, the Court finds they are entitled to summary judgment.

**C. Damages**

Plaintiffs assert that they "are entitled to presumed general damages as reasonable compensation for injury to their occupations." [Doc. No. 48-1 at 9.] They seek between $50,000 to $100,000 for each of Plaintiff American Heritage Railways, Inc. and Plaintiff Old Tucson Entertainment, LLC. [*Id.*]

"In an action for defamation per se, . . . damages can be presumed." *Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 576 (2020); *see also* Kimberly A. Gaab & Sara Church Reese, Cal. Practice Guide: Civil Procedure Before Trial, Claims and Defenses § 4:524 (The Rutter Group 2024) ("[I]n all cases of defamation per se, plaintiffs may recover 'presumed' (or 'assumed') damages—i.e., damages that are presumed to exist as a result of the defamation—*without proof of actual harm*."). To recover presumed damages, Plaintiffs must make a showing of reckless disregard for the truth, which the Court found they have done. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974).

Plaintiffs cite two cases from the Western District of Washington where the court awarded $50,000 and $25,000, respectively, as damages for per se defamation. *Ferguson v. Waid*, No. C17-1685, 2018 WL 6040174 (W.D. Wash. Nov. 19, 2018), *aff'd* 798 F. App'x 986 (9th Cir. 2020); *Olive v. Robinson*, No. C20-0356, 2023 WL 346622 (W.D. Wash. Jan. 20, 2023). These cases are distinguishable. In *Ferguson*, the court based its award of presumed damages not only on "the presumed impact of the defamatory statements on [the defamed's] business[,]" but also "on the evidence at trial of [his] emotional distress." 2018 WL 6040174, at *8. In *Olive*, the court similarly considered the

fact that it was the second time that defendant falsely accused plaintiff of sexual assault. 2023 WL 346622, at *8.  Here, Hirou did not state that Plaintiffs engaged in criminal misconduct nor is there evidence of any actual harm or Hirou having defamed Plaintiffs before.  The Court finds it appropriate to award Plaintiffs $15,000 in presumed, general damages.

### D. Motion to Strike

Hirou filed a motion to strike Plaintiffs' reply brief.  [Doc. No. 51.]  He argues that the reply violates CivLR 7.1(e)(3) because Plaintiffs did not obtain leave from the Court to file it.  [*Id.* at 2.]  Hirou is incorrect.  CivLR 7.1(e)(3) requires any reply to be filed and served no later than seven days prior to the date for which the matter is noticed.  Plaintiffs' reply was filed properly.  The motion to strike is **DENIED**.

### IV.   CONCLUSION

Plaintiffs' motion for partial summary judgment on their claims for declaratory relief and defamation is **GRANTED**.  Plaintiffs are awarded presumed general damages in the amount of $15,000.  The motion to strike is **DENIED**.

It is **SO ORDERED**.

Dated:  November 7, 2025

Hon. Cathy Ann Bencivengo
United States District Judge